HEARD NOVEMBER TERM, 1876.

STATE, ex rel. BARKER, vs. BOWEN.

An action in the nature of *quo warranto* does not lie in the name of the State to determine the title to the office of elector of President and Vice President of the United States; and the objection can be made by the defendants under a plea to the jurisdiction of the State Court in which the action is brought.

An action to determine the title to an office can only be maintained by or in the name of the sovereign with whom the franchises and privileges of the office originated.

The franchises and privileges of the office of elector of President and Vice President originate and are exercised under the Constitution and laws of the United States and not under those of the State, though the power to appoint to the office is with the State.

The action in this case was brought originally in the Supreme Court. It was entitled "The State, *ex relatione* Theodore G. Barker, Samuel McGowan, J. I. Ingram, Robert Aldrich, John W. Harrington, William Wallace and John B. Erwin, *vs.* C. C. Bowen, Timothy Hurley, John Winsmith, Thomas B. Johnston, William B. Nash, Wilson Cooke and William F. Myers," and was in the nature of *quo warranto*, and its object was to obtain the judgment of the Court upon the question whether the relators or the defendants had been elected electors of President and Vice President of the United States at the election held in the State on the 7th day of November, 1876. The relators were the candidates for electors nominated by the party which supported Samuel J. Tilden for the office of President of the United States, and the defendants were the candidates nominated by the party which supported Rutherford B. Hayes for the same office. The complaint alleged that the relators had received a majority of the votes cast at the election, and that the Board of State Canvassers had falsely and fraudulently determined and certified the defendants as the persons elected ; that the certificate of election had been given to them, and that they claimed the right to exercise the functions of the office of electors of President and Vice President.

*James Conner*, with whom was *John B. Gordon*, for relators.

January 26, 1877. The opinion of the Court was delivered by

WILLARD, A. J. This is an action in the nature of *quo warranto* brought by the plaintiffs claiming to have been elected to perform the functions of electors of President and Vice President of the United States for the State of South Carolina, at a general

election held in and for this State on the 7th day of November, A. D. 1876, and complaining that the defendants, claiming to have been elected at such general election of President and Vice President, have procured certificates of such election to be issued to them by the Secretary of State of this State and claim to exercise the offices of such electors, whereas, as they allege, said defendants were not so elected. The prayer of the complaint is that the defendants may make answer to the State and show what warrant or authority they have to use and enjoy the offices, liberties, privileges and franchises aforesaid. The defendants have answered, pleading to the jurisdiction of the Court, without setting up any other defense.

If, then, this Court should conclude that it possessed full jurisdiction in the premises, judgment final in behalf of the plaintiffs would necessarily follow from the state of the pleadings.

This Court possesses, under Section 4, Article IV, of the Constitution of this State, jurisdiction in case of *quo warranto*, and, since the adoption of the Code of Procedure, (Section 443,) that jurisdiction has been exercised in the form of an action in the nature of *quo warranto.—Alexander* vs. *McKenzie*, 2 S. C., 81; *State*, ex rel. *Barker*, vs. *Bowen*, (*ante*, p. —.) If any want of jurisdiction exists, it must arise either from the nature of the rights alleged to be wrongfully exercised by the defendants or from the character of the parties that stand before us as plaintiffs.

The question before us was discussed by the counsel for the defendants chiefly from the general proposition that national questions belong to the national Courts and State questions to the State Courts. On this general theory it was urged that, as the controversy related to the title of the respective parties to an office created under the Constitution and laws of the United States, the case was one necessarily of cognizance in the United States Courts and improper for the consideration of a State tribunal.

I know of no such test as to the relative jurisdiction of the Courts of the United States and of the States as that contended for. As a general rule, the State Courts have concurrent jurisdiction with the United States Courts of questions arising under the Constitution and laws of the United States.

This concurrent jurisdiction is the basis of transfer, in certain specified cases, from the Courts of the States to those of the United States.—Act of Congress, March 3, 1874–75, 472. Certain cases of this general class, among which the most characteristic are

those affecting international commerce and diplomatic intercourse in a particular way, and certain cases immediately affecting the national revenues and administration, are exclusively conferred upon the Courts of the United States; but these must be regarded as exceptions to the more general rule of concurrent jurisdiction.

The jurisdiction of the United States Courts, arising from the character of the parties, rests on special grounds not affecting the general proposition.

Such a scheme of divided jurisdiction resting upon dual Courts as would result from the application of the rule contended for would have deprived the judicial system of the country of organic stability and committed it to the consequences flowing from the attrition between inharmonious parts. As long as we have judicial unity no serious inconvenience is likely to arise from the fact that our laws spring from two distinct sources—the one supreme as to certain subjects, and the other final as to all other subjects not prohibited by it. Both legislative jurisdictions blend in giving shape to the rights of citizens. These rights, from their nature, must be cognizable as to their entirety by a judicial body. Two judicial administrations, acting independently upon the same rights or subject matter, each limited to tracing the operation of laws derived from a particular source upon such rights or matter in controversy, would present an anomaly consistent with neither sound theory nor experience. The Constitution and legislation of the United States has, on the whole, embodied the highest practical wisdom in solidifying the national and State judicial systems, by making every Court in the land subject to all consequences flowing from a dual legislative system. Congress has effectuated this purpose by drawing the line that divides their jurisdiction, when not influenced by the character of the parties, upon the nature of the rights capable of being brought into controversy, and not upon any theory of committing the interpretation of the national Constitution and laws to one body, and that of State Constitutions and laws to another.

It follows that, should it appear that both the rights in controversy and those to which the controversy relates arose or derived their essential features from the Constitution and laws of the United States, that fact would not of itself defeat the jurisdiction of the Court otherwise than by means of transfer to the concurrent authority of the United States Circuit Court, where the questions to

be considered arose under the Constitution and laws of the United States; but it would be necessary, in order to attain that end, to show that the case belongs to a category either conferred exclusively on the United States Courts or prohibited to the State Courts.

The real point of difficulty in the present case was not noticed by the counsel for the defendants. It arises out of the general rule governing the writ of *quo warranto*, and therefore applicable to formal proceedings serving as a substitute for that remedy. The present action is brought in the name of the State of South Carolina. Can it be maintained in the name of the State?' And if not, does not that circumstance prevent judgment? If so, a further question will arise whether that defect can become available to the defendants under their present plea to the jurisdiction, notwithstanding that the objection was not taken by them in form.

The familiar rule governing proceedings by *quo warranto* is that only the soverign from whom the office, franchise or liberty—that is, the subject of controversy—originated, and into whose hands the same, if forfeited, would return, can maintain the remedy or authorize it by the allowance of his name as a means of asserting the title or right of a citizen to the same.

It is necessary, then, to inquire whether the United States or the State stand in the relation just expressed to the rights in controversy in the present case.

The question then arises, Did the authority claimed to be exercised by the defendants as electors of President and Vice President originate in the Constitution and laws of the United States or in those of the State? Whatever difficulties this question presents arise from the fact that, while the functions exercised by the electors of President and Vice President were created and governed by the Constitution and laws of the United States, the right of respective parties to possess and exercise those functions depends wholly on the effect to be given to the action of State officers acting under the Constitution and laws of the State.

The nature of the functions of the electors of President and Vice President must be examined in order to discover the relationship of those functions to the national and State authorities.

The electoral function certainly involves a franchise or privilege, for the electors are permitted to exercise choice, as it regards the selection of a President and Vice President,—that is, not enjoyed in common with other citizens, and does not arise out of common

right. It is conferred by the sovereign authority, and exclusively enjoyed by those upon whom it is conferred.

This franchise or privilege is one of a public nature, as immediately concerning the public. It will not be necessary to inquire whether each elector is to be regarded as holding an office under the United States, for it is enough for the purpose of the present question to know that the functions of the electors involve the characteristics just stated.

The Constitution and laws of the United States look rather to the body of electors within each State as the subjects of legal control and the sources of legal authority than to the rights and duties of the individual electors. The Constitution (Article II, Section 1,) declares that "each State shall appoint, in such manner as the Legislature thereof shall direct, a number of electors equal to the whole number of Senators and Representatives to which the State may be entitled to in Congress." The twelfth amendment provides that the electors shall meet in their respective States and vote by ballot for President and Vice President, one of whom at least shall not be an inhabitant of the same State with themselves; they shall name in their ballots the persons voted for as President, and in distinct ballots the persons voted for as Vice President, and they shall make distinct lists of all persons voted for as President and Vice President, and of the number of votes for each, which lists they shall sign and certify and transmit sealed to the seat of government of the United States, directed to the President of the Senate.

The action of the electors contemplated in these provisions is such as is proper to an aggregate body of a particular constitution, and not to individuals exercising separate and independent functions. Following this idea, Congress has described this body as a "College of Electors," (Rev. Stat., § 233, p. 21,) and as such has regulated the action of such body in many particulars. It is true that each elector acting with the body in conformity to law influences, separately, the general count at the seat of government, independently of whether the majority of votes cast by the body with which he is immediately connected are in accordance with his individual vote. Still, his right to vote depends upon his acting with and as part of the Electoral College; for if he neglects so to do a vacancy occurs, capable of being filled under the authority of the Legislature of the State.—Rev. Stat. U. S., p. 21, § 133. That this was the idea that Congress entertained of the electoral function is

very clearly implied in the case of an elector classed with that of a Representative in Congress and member of a State Legislature under the provisions of Section 211 of the Revised Statutes of the United States, where a right of action is conferred upon all persons who have been deprived of any office other than those above named by-reason of a denial of the civil rights of any citizen.

The only explanation of this classification that appears is that all the persons excepted stand in the relation of members of a body recognized by law and through which alone their functions are capable of being exercised.

It may, therefore, be affirmed that the right in controversy is accurately stated as one to participate in the action of a public body, clothed as such with a certain franchise or privilege of a public nature, to wit, of exercising choice in the selection of a President and Vice President of the United States.

It is indisputable that the right so claimed to be exercised by participating in this electoral action of the Electoral College has its origin and sanction in the Constitution and laws of the United States.

The view just presented assumes that the collective body of electors, called the College of Electors, is, as distinguished from the individual electors, clothed with the elective franchise conferred by the Constitution and laws of the United States in relation to the choice of a President and Vice President. This view would exclude the idea that the true effect of the Constitution of the United States was to confer that franchise on the States as such, to be exercised according to their discretion.

The difference between the two theories of the disposition of the elective franchise, just noticed, would lead to opposite conclusions bearing directly on this case.

If the Constitution of the United States vests the franchise wholly in the State, so that the discretion involved in the selection of persons to fill the offices of President and Vice President might be exercised by the State acting through her ordinary political agencies, then the State would have to be regarded as the true elector, having as many voters as the number of electors she is entitled to appoint, and it would be competent for her to appoint electors whose only legal duty would be to express, in form, the choice already fully determined by the authority of the State. In this case the electors of President and Vice President would fall in the condition of mere agents of the States to carry out matters

resting wholly in its discretion.  In this case, no reason appears why such agents might not be displaced at will by the State either through political or judicial agencies.  If, on the other hand, the Electoral College is the true depository of the elective functions, then the discretion to be used in the selection of persons to fill the offices of President and Vice President rests with persons composing legally such Electoral College.

In this case the State has mere authority to appoint, and, at most, may confer the title to hold the franchise but not control its exercise.

I regard the latter view as the one entitled to be received.  The idea that is embodied throughout the legislation by Congress is consistent with itself from the earliest to the latest Acts, and is entitled to the authority of a contemporaneous exposition of the Constitution in its original provision in Article II.  This idea is fairly embodied in the twelfth amendment and must prevail.  According to this idea, the College of Electors is the proper depository of the electoral function.  Only those who participate in its action are entitled to a voice in the election of President and Vice President.  The rule of its procedure is placed beyond the control of the State and emanates from the Constitution and Congress of the United States.

The right of each elector assembled to exercise his individual choice is clearly indicated by the words "vote by ballot."  Such is the ordinary sense of these terms when applied to the more numerous class of electors who participate in the general elections, and no reason appears for giving them any other interpretation in the present connection.  These reasons appear to be sufficient to support the conclusions stated, while that conclusion is consistent with the actual practice since the Constitution went into operation.

Does the fact that the title of the individual electors to claim this right is matured under the provisions of the Constitution and laws of the State alone, through the acts of public authority, performed by the State officers and agencies, tend to place the State in such a relation to the functions performed that the State may exercise the rights proper to the sovereign who created such functions? Clearly it does not.

The sovereign who creates an office or franchise often places in the hands of a subject the right to fill such office or confer such franchise by election or appointment, yet that fact has never obvi-

ated the necessity of proceeding in the name of the sovereign who created and may resume such office or franchise where the title of a subject to it was to be asserted.

When the question arises between the supreme sovereignty and a subordinate sovereign it should receive the same solution.

In the present case the United States has created the function, but authorized the State to exercise the power of appointment to fill it.

The case of a municipal corporation, created by the sovereign, who has conferred upon the corporators the power of choosing municipal officers, involves the same general relationship. In the latter case the ouster must take place in the name of the sovereign.

The act of appointment is one that can be exercised in the hands of a subject, while the act of ouster, through the Courts of law, can only be claimed of common right through the sovereign. The existence, therefore, of the former right cannot imply the existence of the latter, for its nature and quality are different.

In *Wallace* vs. *Anderson*, (1 Wheat., 291,) it was held that a writ of *quo warranto* could not be maintained against an officer of the United States except in the name of the government of the United States. The same was held in *Lerritory* vs. *Lockwood*, 3 Wall., 236.

It is very clear that, if the action in the nature of *quo warranto* is an appropriate remedy under the claims made in behalf of the individuals who unite with the State as plaintiffs, that such proceedings should be presented in the name of the United States. It will not be necessary to determine whether an action in the nature of *quo warranto* can be maintained in the State Courts in the name of the United States, although no good reason has yet appeared why, if the United States choose to employ the Courts of the State for such a purpose, they might not do so. It will be the proper time to discuss and settle that question when an attempt is made to exercise it.

The State cannot properly raise it, nor can private relators raise it in the name of the State. The objection raised by the defendants to the jurisdiction of the Court involves the question just stated.

To meet this objection directly, it would be necessary to decide that which, in my view, cannot be properly decided until the proper parties are before the Court.

As, however, the Court is enabled to perceive a real objection to its proceeding with the case arising from the want of proper parties,

it is not restricted to the grounds of want of jurisdiction urged by the defendants, and may give weight to the considerations that present an insuperable objection to our exercising such jurisdiction in the present case should we conclude that we possess it as a general proposition.—*McClung* vs. *Silliman*, 6 Wheat., 598.

The complaint should be dismissed.

*Wright*, A. J., concurred.

*Moses*, C. J., concurred in the result.

---

HEARD NOVEMBER TERM, 1876.